UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-Civ-21855-COOKE/TURNOFF

FRANKLIN R. LACY,

    Plaintiff,

v.

BP, PLC; TRANSOCEAN LTD; APPLIED
DRILLING TECHNOLOGY, INC.;
CHALLENGER MINERALS, INC.,
HALLIBURTON COMPANY; CARL-HENRIC
SVANBERG; BOB DUDLEY; BP
AMERICA, INC.; BP PRODUCTS
NORTH AMERICA, INC.; BP
EXPLORATION & PRODUCTION INC.; BP
OIL INTERNATIONAL LTD;
HALLIBURTON ENERGY SERVICES,
INC.; BP CORPORATION NORTH
AMERICA, INC.; BP COMPANY NORTH
AMERICA, INC.; BP AMERICA
PRODUCTION COMPANY; and, BP
HOLDINGS NORTH AMERICA, LTD.

    Defendants.
_____/

**OMNIBUS ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

This matter is before the Court on Defendants' multiple Motions to Dismiss Plaintiff's Amended Complaint. (ECF Nos. 68, 69, 82, 101, 163). Plaintiff has responded in opposition to the Motions, (ECF Nos. 74, 79, 83, 105, 166), and Defendants have replied. (ECF Nos. 76, 77). After reviewing the pleadings, the record, and the relevant legal authorities, Plaintiff's Amended Complaint is dismissed, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**I.    BACKGROUND**

Plaintiff's lawsuit, filed *pro se*, arises out of the fire and explosion aboard the *Deep Water Horizon* oil rig and the resulting oil spill out of the Macondo Well. Plaintiff alleges that Defendants BP p.l.c. ("BP"), Transocean Ltd. ("Transocean"), Halliburton Company

("Halliburton"), and their subsidiaries established a website to request that "vendors send them solutions for stopping the disastrous oil spill and/or clean up [sic] the environment." (Am. Compl. 3, 5). Without citing to specific language from the website, Plaintiff further alleges that Defendants offered to pay an uncapped fee to vendors upon a successful submission, calculated as a percentage of the total savings attributable to the vendor's solution. (*Id.* at 4).

Plaintiff concedes that BP communicated to him that it had rejected his submission. (*Id.*) However, he claims that Defendants then secretively used his model, saving themselves "an amount approaching $40.9 billion." (*Id.* at 3, 4). Accordingly, Plaintiff seeks $6 billion in damages from Defendants, as well as "interest at 18% per annum from July 17, 2010 and 50% punitive damages" for Defendants' alleged fraud, civil theft, and breach of implied contract. (*Id.* at 6, 7).

## II.   LEGAL STANDARD

### A. Choice of Law

Florida's choice-of-law rules govern this case. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941) (holding that federal courts sitting in diversity apply the conflict of laws rules of the state in which they sit). Under Florida law, "a court makes a separate choice of law determination with respect to each particular issue under consideration." *Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115 (11th Cir. 1996). Plaintiff does not state what law governs his claims and his Complaint is factually deficient to the extent that it precludes a thorough conflict of laws analysis. However, under the circumstances, and for the reasons stated below, I find that Florida law is most appropriate for each of Plaintiff's three claims.

To determine what law governs tort claims, Florida courts apply "the 'most significant relationship' test set forth in the Restatement (Second) of Conflict of Laws § 145." *Id.* Section 148 of the Restatement provides the choice of law principles applicable to claims of fraud and states:

> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
> (b) the place where the plaintiff received the representations,
>
> (c) the place where the defendant made the representations,
>
> (d) the domicile, residence, nationality, place of incorporation and place of business of the parties,
>
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148 (1971).

Plaintiff alleges "the consortium committed fraud in deliberately making false statements for their [sic] gain," but refers only to one statement made by Mr. Hymers, the managing patent attorney of BP International Ltd., on February 7, 2011. (Am. Compl. 5, 6). Plaintiff claims that Mr. Hymers' statement—"Regardless, none of your suggestions were progressed beyond the first state of the assessment process and thus none were passed to those developing the equipment and process implemented on the Macondo Well"—was "blatantly false" and "fraudulent." (*Id.* at 5).[1] Plaintiff does not say how or where he relied on this statement, but the location of reliance is an important factor in determining what law applies to the fraud claim. *See* Restatement (Second) of Conflict of Laws § 148(2)(a) (1971). If Plaintiff did rely on the above statement to his detriment, he likely did so in Florida.[2] Weighing the aforementioned factors with limited facts and evidence, I have determined that Florida law governs Plaintiff's fraud claim, as Florida appears to have the most "significant relationship" to this cause of action.

The "most significant relationship" test also applies to Plaintiff's civil theft or conversion claims.[3] *Trumpet Vine*, 92 F.3d at 1115; Restatement (Second) of Conflict of Laws § 147 comment h. Plaintiff's claim of civil theft or conversion presumably relates to the design documents attached to the Complaint. (Am. Compl. 17, 18, 25). However,

---

[1] Mr. Hymers included this statement in a letter sent "via post and email" from his address in Middlesex, United Kingdom to Mr. Lacy's address in Tampa, Florida. (Am. Compl. 37).

[2] With regard to this cause of action, Mr. Lacy never claims that he travelled or acted outside of the state of Florida.

[3] Plaintiff alleges "theft/larceny," which are crimes. (Am. Compl. 6). I will address these allegations as the torts of civil theft and conversion.

Plaintiff never claims he sent those documents to Defendants. Therefore, the state that has the "most significant relationship" to the alleged civil theft or conversion is Florida, where Plaintiff may have created those documents. Accordingly, Florida law governs Plaintiff's civil theft or conversion claim. *Trumpet Vine,* 92 F.3d at 1115-16.

For conflict of laws issues arising out of contract, Florida applies the *lex loci contractus* rule. *Trumpet Vine,* 92 F.3d at 1119. Under this rule, the law of the place where the contract is made governs the obligations of contract. *Jemco, Inc. v. United Parcel Serv., Inc.*, 400 So. 2d 499, 500 (Fla. 3rd DCA 1981). A contract is made where the last act necessary to complete the contract is performed. *Id*. Plaintiff does not address any of the elements of express or implied contract, including formation or reliance. Therefore, Plaintiff's contract claim fails in such a way as to prevent the Court from determining which law governs. Accordingly, the Court will apply Florida law for the purpose of laying out the fundamental elements of contract.

### B. Pleading Standards

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this pleading standard, and thereby survive a motion to dismiss, a plaintiff must plead claims that are not just conceivable, but "plausible" on their face. Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires factual allegations that are sufficiently developed, allowing the court to draw the "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

A plaintiff alleging state law fraud claims must satisfy the heightened pleading standard of Rule 9(b), which requires that a plaintiff state the circumstances with "particularity." Fed. R. Civ. P. 9(b); *FindWhat Investor Group v.FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011). Rule 9(b) "plainly requires a complaint to set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the

fraud." *Id.* Failure to meet this higher standard is grounds for dismissal. *Id*. (quoting *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005) (per curiam)).

Although a *pro se* litigant's pleadings are construed more liberally than pleadings drafted by attorneys, "this leniency does not give the court license to serve as de facto counsel for a party ... or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. County of Escambia*, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted). "Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir. 1991). A district court need not, however, "allow an amendment . . . where an amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

### III.   ANALYSIS

Plaintiff's Amended Complaint fails to state claims that are plausible on their face against any Defendant. I will address each of Plaintiff's claims in turn.

### A. Breach of Implied Contract

First, Plaintiff fails to plausibly allege the elements of a contract implied in law, or quasi contract, namely that: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 5th DCA 1997).

Plaintiff fails to include any factual allegations in his Amended Complaint that are "plausible" enough to allow a "reasonable inference" of the existence of any of the four elements of quasi contract. In fact, Plaintiff concedes that his Amended Complaint lacks the detail necessary to allege how Defendants purportedly used his idea, and admits that his submission did not provide BP with sufficient detail to implement his idea. (ECF No. 72 at 38-39). However, Plaintiff asks that the court overlook the "brevity" of his submission to Defendants because "Defendants' submission form was extremely limiting." (*Id.*). In any event, Plaintiff's conclusion that "Defendants obviously incorporated Plaintiff's solutions" is unsupported by any plausible factual allegation. (*Id.*). Without any showing of actions or statements that could give rise to a contract implied in law, Plaintiff's breach of contract

claim cannot withstand a motion to dismiss.

### B. Civil Theft or Conversion

Plaintiff's Amended Complaint also fails to allege a plausible claim of civil theft or conversion by any of the Defendants. Under Florida Law, a claimant must prove the statutory elements of theft, as well as criminal intent, to establish a cause of action for civil theft. Fla. Stat. § 772.11 (1997); *Gersh v. Cofman*, 769 So. 2d 407, 409 (Fla. 4th DCA 2000). A person commits theft if he "knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (1) deprive the other person of a right to the property or a benefit from the property, or (2) appropriate the property to his or her own use or to the use of any person not entitled to the use of the property." Fla. Stat. § 812.014 (2011).

Plaintiff attaches a number of unspecified figures and drawings to his Amended Complaint, but fails to specify whether he sent those figures and drawings to BP or any of the other Defendants, either through use of their submission forms or through another form of correspondence. Accordingly, Plaintiff's claims do not allow for a reasonable inference that Defendants used his submissions or that they had the criminal intent necessary for a civil theft claim. Therefore, Plaintiff's claim of civil theft does not meet the pleading standard set forth in *Twombly* and *Iqbal*, and cannot survive Defendants' Motions to Dismiss.

### C. Fraud

Finally, Plaintiff's fraud claims do not meet the heightened pleading standard articulated by Rule 9(b) of the Federal Rules of Civil Procedure. Under Florida law, the elements of fraud are: "(1) a false statement concerning a specific material fact, (2) the maker's knowledge that the representation is false, (3) an intention that the representation induces another's reliance, and (4) consequent injury by the other party acting in reliance on the representation." *Lopez-Infante v. Union Cent. Life Ins. Co.*, 809 So. 2d 13, 15 (Fla. 3d DCA 2002).

Plaintiff cites to a BP rejection letter he received, concluding that the statements therein are "blatantly false" and "fraudulent." (Am. Compl. 5). However, the pleading requirements set forth in *Twombly* and *Iqbal* do not permit courts to proceed on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements . . . ." *Iqbal*, 556 U.S. at 678. Plaintiff completely fails to address the elements of fraud, and does not articulate any statements or circumstances to even remotely support those elements.

## D. CONCLUSION

Therefore, due to a complete lack of plausible factual allegations, Plaintiff's Amended Complaint cannot survive Defendants' Motions to Dismiss. Moreover, I find that additional amendments to Plaintiff's already amended Complaint would be futile. Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. Defendants' Motions to Dismiss (ECF Nos. 68, 69, 82, 101, 163) are **GRANTED**.
2. Plaintiff's Amended Complaint (ECF No. 67) is **DISMISSED** *with prejudice*.
3. All pending motions are **DENIED** *as moot*.
4. The Clerk is directed to **CLOSE** this case.

**DONE and ORDERED** in chambers, at Miami, Florida, this 29th day of June 2015.

_____
MARCIA G. COOKE
United States District Judge

Copies provided to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of Record*
*Franklin R. Lacy, pro se*